[No. 7485-4-III.   Division Three.   October 28, 1986.]

ROGER L. CALHOUN, *Respondent,* v. DOUGLAS MERRITT, ET AL, *Appellants.*

*Harold D. Clarke III* and *Turner, Stoeve, Gagliardi & Goss,* for appellants.

*Lloyd A. Herman* and *Herman & Associates, P.S.,* for respondent.

McINTURFF, J.—Douglas Merritt appeals the superior court order denying his motion to set aside a default judgment. We reverse the portion of the order relating to damages.

In June 1984, Roger Calhoun was stopped at an intersection when his automobile was rear-ended by Mr. Merritt. Mr. Calhoun hired an attorney to represent him in his damage claim against Mr. Merritt. The attorney dealt directly with Mr. Merritt's insurer.

In early 1985, the attorney sent a settlement brochure to Henry Burkhardt, the adjuster, in which he proposed a settlement of Mr. Calhoun's claim for $27,923.27. On March 5, 1985, Mr. Burkhardt returned the settlement brochure to the attorney, noting that in his view, the value of the claim was far less than what the attorney had set and that he did not believe there was room to compromise. He further stated: "By copy of this letter, I am alerting Mr. Merritt to the anticipated Summons and Complaint."

On April 10, 1985, Mr. Calhoun filed a summons and complaint against Mr. Merritt, alleging Mr. Merritt's negligence had caused him property damage and severe bodily injuries which resulted in unspecified medical costs and $50,000 in pain and suffering. The action was served upon Mr. Merritt on July 8, 1985. The summons read:

> In order to defend against this lawsuit, you must respond . . . by stating your defense in writing, and by serving a copy upon the undersigned attorney . . . within twenty (20) days . . . or a default judgment may be entered against you without notice. A default judgment is one where Plaintiff is entitled to what he asks for because you have not responded.

Mr. Merritt did not answer.

On August 6, 1985, the court entered an order of default.

That same day, the court held a hearing on damages, then issued findings of fact, conclusions of law and default judgment awarding Mr. Calhoun $50,000 for pain and suffering, plus $2,183.27 for medical costs, $3,080 for wages for 110 days of lost work, and $206.50 for court costs.

It was not until Mr. Calhoun's attorney sent a copy of the judgment to Mr. Burkhardt that Mr. Merritt entered a notice of appearance in the action on August 23, 1985. On September 25, 1985, Mr. Merritt moved to vacate the default judgment. He attested:

> I did not understand the importance of [the documents]. I did not realize at the time that I needed to do anything . . . I had previously been in contact with my insurance company, . . . and I understood that they were in contact with the plaintiff's attorney. At the time, I did not understand that I needed to take the papers to an attorney or notify my insurance company.
>
> . . . Again, because I had talked to Mr. Burkhardt before, I understood that the plaintiff's attorney would notify my insurance company and I just believed there was nothing further for me to do. Although Mr. Burkhardt had earlier told me there may be some papers served upon me, that did not mean anything to me, so I was not prepared to act upon the papers that were left with me.

Mr. Burkhardt stated that he did not know of the default until he received a copy of it from Mr. Calhoun's attorney in August 1985. He further stated:

> During the course of my investigation of this claim during 1984 and the first part of 1985, I received facts which would indicate to me that this claim has a value far less than the judgment entered in excess of Fifty Five Thousand Dollars ($55,000). As to the issue of damages, it is my personal belief that the defendant has a meritorious defense to the amount entered and that a jury or arbitrator would award far less than this amount.

The motion for vacation of the default was denied.

Default judgments are not favored because "'[i]t is the policy of the law that controversies be determined on the merits . . .'" *Griggs v. Averbeck Realty, Inc.*, 92 Wn.2d 576,

581, 599 P.2d 1289 (1979) (quoting *Dlouhy v. Dlouhy,* 55 Wn.2d 718, 721, 349 P.2d 1073 (1960)). On the other hand, the orderly system of justice mandates compliance with judicial summons. *Griggs.* Thus, the decision on a motion to vacate a default judgment is guided by equitable principles:

> [T]he overriding reason should be whether or not justice is being done. Justice will not be done if hurried defaults are allowed any more than if continuing delays are permitted. . . . What is just and proper must be determined by the facts of each case, not by a hard and fast rule applicable to all situations regardless of the outcome.

*Griggs,* at 582 (quoting *Widicus v. Southwestern Elec. Coop., Inc.,* 26 Ill. App. 2d 102, 109, 167 N.E.2d 799 (1960)).

We will not overturn the superior court's decision unless an abuse of discretion clearly appears. Such an abuse is less likely to be found if the superior court sets aside the default judgment than where it refuses to do so. *White v. Holm,* 73 Wn.2d 348, 351–52, 438 P.2d 581 (1968). In exercising its discretion, the superior court considers four factors. The primary factors are: (1) the existence of substantial evidence to support, at least prima facie, a defense to the claim asserted; (2) the reason for the party's failure to timely appear, *i.e.,* whether it was the result of mistake, inadvertence, surprise or excusable neglect. The secondary factors are: (3) the party's diligence in asking for relief following notice of the entry of the default; and (4) the effect of vacating the judgment on the opposing party. *White,* at 352. *Northwest Adm'rs, Inc. v. Roundy,* 42 Wn. App. 771, 774, 713 P.2d 1127 (1986).

These factors vary in dispositive significance. A strong defense requires less of a showing of excuse, provided the failure to appear was not willful. But if the party can show only a minimal prima facie defense, the court will scrutinize the other considerations more carefully. *White,* at 352–53.

## A
### PRIMA FACIE DEFENSE

As for his responsibility for the accident, Mr. Merritt has

presented no defense. Thus, the default judgment of liability must stand, and the only remaining question is whether the court erred in refusing to vacate the damage portion of the default judgment. Mr. Merritt contends that the damage award for approximately $55,000 is excessive, relying on Mr. Burkhardt's affidavit to the effect that (1) he has facts which would indicate the claim is worth far less, and (2) it is his personal belief that Mr. Merritt has a meritorious defense to the amount entered.

Mr. Calhoun correctly points out: "Affidavits supporting motions to vacate judgments must set out the facts constituting a defense. It is insufficient to merely state allegations and conclusions." *Commercial Courier Serv., Inc. v. Miller,* 13 Wn. App. 98, 104, 533 P.2d 852 (1975) (citing CR 60(e)(1)). *See also Griggs,* at 583. In *Griggs,* the affidavits did not conform to CR 60. There, the court excused the violation, because the record elsewhere indicated facts constituting a defense. Here, Mr. Burkhardt's affidavit also violates CR 60. He alleges the damage award is questionable, without specifying facts to support his allegation. However, Mr. Merritt points out in his brief the difficulty in developing a prima facie case to a damage award for pain and suffering without the opportunity for discovery.

The factors set out in *White,* including whether the defendant has presented a prima facie defense to the claim, must be applied in the context of the general rules cited above. That is, default judgments are not favored, motions to vacate default judgments are essentially equitable proceedings, and the overriding concern of the courts is to do justice. *Griggs,* at 582. In this context, we note that development of a defense to the damages would require the examination of Mr. Calhoun by a defense expert. Here, the default was entered before any such discovery could take place. Moreover, presenting a defense to damages for pain *and suffering is always complicated* by the subjective as opposed to objective nature of such damages. Given these circumstances, it would be inequitable and unjust to deny the motion to vacate the damage portion of the judgment

on the ground that Mr. Merritt did not present a prima facie defense. Thus, we look to the remaining considerations set out in *White*.

## B
### EXCUSE

In *White*, at 349–50, the defendant did not answer because he and his insurer misunderstood who was to provide legal counsel during the time it took the insurer to review the case and determine if coverage was provided for the claim. The court held these facts constituted a bona fide mistake. *White*, at 355. Similarly, in *Spoar v. Spokane Turn–Verein*, 64 Wash. 208, 212, 116 P. 627 (1911), the court upheld an order vacating a default in circumstances where the corporate officer served with the summons and complaint was a native of Germany, unfamiliar with our legal process, and believed that no further action would be taken until he had been notified of the date of trial.

Mr. Merritt's reasons for not answering are comparable to the reasons accepted by the courts in *White* and *Spoar*. As stated in his affidavit, the fact that his insurer was already involved in the case and dealing with Mr. Calhoun's attorney caused him to believe that the insurer knew of the lawsuit and would respond to it. While Mr. Burkhardt advised him to expect service, there is no indication that he told him what to do once service occurred. As in *White* and *Spoar*, his misunderstanding constituted a bona fide mistake.

*Conner v. Universal Utils.*, 105 Wn.2d 168, 712 P.2d 849 (1986), which Mr. Calhoun relies upon, is distinguishable. There, the defendant was served through its registered agent who passed the papers on to the utility's in–house counsel. Counsel misplaced the pleadings and did not appear or answer. As noted above, Mr. Merritt's inaction was the result of a misunderstanding. No similar misunderstanding was present in *Conner*.

## C
### DILIGENCE IN SEEKING RELIEF AND PREJUDICE
### TO PLAINTIFF

Finally, we note Mr. Merritt acted promptly in moving to vacate the default once it was entered, and there is nothing in the record to indicate Mr. Calhoun has been prejudiced in asserting his damage claim by the lapse of time.

Accordingly, we hold the Superior Court abused its discretion when it denied Mr. Merritt's motion to set aside the default judgment relating to damages. The remainder of the default judgment is affirmed.

The judgment of the Superior Court is reversed in part; the matter is remanded to the Superior Court for trial. On remand, the Superior Court may impose sanctions against Mr. Merritt as terms for vacating the default judgment, if it deems sanctions to be appropriate.

GREEN, C.J., and THOMPSON, J., concur.